UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL FRAZIER AND JESSICA
FRAZIER, ON BEHALF OF THEIR
MINOR CHILD, J.L.F.    PLAINTIFFS

V.    CIVIL ACTION NO. 3:16-CV-976-DPJ-FKB

UNIVERSITY OF MISSISSIPPI    DEFENDANTS
MEDICAL CENTER D/B/A BATSON
CHILDREN'S HOSPITAL, ET AL.

ORDER

Defendant Dr. Lori McBride seeks dismissal of the medical-malpractice claims against her based on lack of personal and subject-matter jurisdiction, *forum non conveniens*, and pre-maturity of suit under Louisiana law. Because the Court agrees that it lacks personal jurisdiction over the claims against McBride, her Motion to Dismiss for Lack of Jurisdiction [76] is granted. Her Motion to Dismiss based on Choice of Law, Pre-Maturity of Suit under Louisiana Law, and *Forum Non Conveniens* [77] is considered moot, and the claims against her are dismissed without prejudice.

I.    Facts and Procedural History

Dr. McBride is a pediatric neurosurgeon practicing in New Orleans, Louisiana. Plaintiff J.L.F., the minor daughter of Michael and Jessica Frazier, was a preterm infant born on April 17, 2004, with hydrocephalus (a buildup of excess cerebrospinal fluid in the brain). The Fraziers reside in Meridian, Mississippi.

J.L.F.'s relevant treatment history began in Mississippi on January 21, 2009, when she received a ventricular shunt implant to drain cerebrospinal fluid from the brain into the abdomen. Seven years later, she developed complications and was eventually transferred by ambulance to

Children's Hospital Foundation of New Orleans where Dr. McBride performed surgery to change the valve in her shunt.

According to the Amended Complaint, on March 8, 2016, discharge planners at Children's Hospital arranged for J.L.F.'s discharge to Sta-Home Health & Hospice, a Mississippi-based home health-care provider. The Home Health Certification and Plan of Care that was sent to Sta-Home listed McBride as J.L.F.'s physician.

J.L.F. continued to suffer various symptoms and was readmitted for several months of inpatient hospital care at Children's Hospital (New Orleans) and a hospital in Jackson, Mississippi. She was ultimately "discharged home with permanent brain injuries requiring tube feedings and nursing care in the home 16 hours per day." Am. Compl. [9] ¶ 63.

The Fraziers filed this lawsuit on behalf of J.L.F. on December 21, 2016. They assert claims for medical malpractice against a slew of medical providers. They premise jurisdiction in this Court on federal claims filed against three of the hospital defendants under the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd, and § 1557 of the Affordable Care Act, 42 U.S.C. § 18116. As to McBride, the Fraziers assert state-law claims for negligence per se, patient abandonment and gross negligence, and negligence. Am. Compl. [9] ¶¶ 147–83. McBride filed two motions to dismiss, one asserting lack of personal and subject-matter jurisdiction and the other seeking dismissal on the basis of *forum non conveniens* and pre-maturity of suit under Louisiana law. Because the Court finds McBride's jurisdictional motion dispositive, it does not reach the issues raised in the second motion.

II.     Analysis

McBride urges dismissal on the basis of both personal and subject-matter jurisdiction. "[I]n cases originating in federal court, there is no unyielding jurisdictional hierarchy" requiring

the Court to consider a challenge to its subject-matter jurisdiction before ruling on personal jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). Instead,

> lower courts facing multiple grounds for dismissal [should] consider the complexity of the subject-matter jurisdiction issues raised by the case, as well as concerns of federalism, and of judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction.

*Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000). Because the Court concludes that the personal-jurisdiction issue is relatively "straightforward" and "present[s] no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question," it chooses to "turn[] directly to personal jurisdiction." *Ruhrgas AG*, 526 U.S. at 588.

"Absent a federal statute that provides for more expansive personal jurisdiction, the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in which the district court sits." *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001) (citing Fed. R. Civ. P. 4(k)(1)). The parties do not suggest that either of the federal statutes involved in this case expands the Court's personal jurisdictional reach, so the Court considers whether a Mississippi state court would have personal jurisdiction over the claims against McBride.

> For a federal district court in [Mississippi] to exercise personal jurisdiction over a defendant, that exercise of jurisdiction must first be proper under [Mississippi's] long-arm statute. If the state long-arm statute allows the district court to exercise personal jurisdiction, the exercise of personal jurisdiction must also be proper under the Due Process Clause of the Fourteenth Amendment.

*Id.*

    A.    Long-Arm Statute

The Fraziers contend that McBride is subject to personal jurisdiction in Mississippi under the tort prong of the long-arm statute, which provides:

3

> Any nonresident person . . . who shall commit a tort in whole or in part in this state against a resident or nonresident of this state . . . shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57.

The Mississippi Supreme Court has held that "for purposes of our long-arm statute, a tort is committed in Mississippi when the injury results in this State . . . because an injury is necessary to complete a tort." *Horne v. Mobile Area Water & Sewer Sys.*, 897 So. 2d 972, 977 (Miss. 2004) (citing *Sorrells v. R & R Custom Coach Works, Inc.*, 636 So. 2d 668, 672 (Miss. 1994)). On the other hand, "consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).

In *Dunn v. Yager*, the court considered the application of the tort prong of the long-arm statute to a medical-malpractice claim against an out-of-state doctor. 58 So. 3d 1171 (Miss. 2011). There, plaintiff Sharon W. Dunn traveled from her home on the Mississippi coast to Mobile, Alabama, for treatment by Dr. John G. Yager. Alleging an adverse reaction to a drug Yager prescribed, Dunn sued Yager in Mississippi state court, asserting failure-to-warn medical-malpractice claims. Yager contested personal jurisdiction, and the Mississippi Supreme Court upheld the trial court's exercise of personal jurisdiction over him, concluding that "Dunn's actual injury, not the mere consequences thereof, occurred in Mississippi. Dunn filled the prescription in Mississippi, consumed the prescription drugs in Mississippi, and the effects of her injury were suffered in Mississippi." 58 So. 3d at 1185.

Under *Dunn*, the Court assumes that Mississippi's long-arm statute would permit it to exercise personal jurisdiction over McBride under the facts alleged in the Amended Complaint.

4

The Fraziers claim that steps McBride took in Louisiana caused delays and resulting injury once J.L.F. returned home to Mississippi.

B. Due Process

The personal-jurisdiction inquiry does not end with the Mississippi statute. The Court must also consider due process.

> The constitutional limitations on the reach of the personal jurisdiction of a court are now quite familiar. The exercise of personal jurisdiction over a nonresident defendant comports with due process principles only when two requirements are met. First, the nonresident defendant must have purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that forum state. Second, the exercise of personal jurisdiction over the nonresident defendant must not offend traditional notions of fair play and substantial justice.

*Allred v. Moore & Peterson*, 117 F.3d 278, 285 (5th Cir. 1997) (internal quotation marks and citations omitted). Starting with the minimum-contacts inquiry, it

> may be further subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. General jurisdiction, however, will attach, even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action, if the defendant's contacts with the forum state are both "continuous and systematic."

*Id.* at 286 (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1996)) (additional citation omitted). Because there has been no hearing, the Fraziers are merely required to make a prima facie showing of these requirements. *Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990).

1. General Jurisdiction

In the general-jurisdiction section of the Fraziers' memorandum, they say general jurisdiction exists by virtue of Mississippi Code sections 13-3-57 (the long-arm statute) and 15-1-36 (the medical-malpractice statute). The Fraziers offer no legal authority to support this argument, and it is not persuasive. First, as noted above, satisfaction of the long-arm statute is

5

just the first step in the personal-jurisdiction analysis. *Submersible Sys., Inc.*, 249 F.3d at 418. Due process must still be addressed. *Id.* Second, the mere existence of a statute creating a cause of action cannot establish a defendant's continuous and systematic contacts with the forum state.

The only other argument that seems to touch general jurisdiction in the Fraziers' memorandum is found in another section where they say due process is satisfied for the reasons stated in *Dunn v. Yager*. Pls.' Mem. [86] at 4. But *Dunn* is easily distinguishable on this issue. There, the doctor

> was an approved Mississippi Medicaid provider from January 1989 through August 1995. . . . Furthermore, since 1992, Dr. Yager had participated in various PPOs which, *inter alia*, gave him access to more than 800,000 members of BCBS-MS as prospective clients. In addition, Dr. Yager solicited patients through the PPOs, as an approved preferred provider. Finally, Dr. Yager's treatment of Dunn was itself approved by F.A. Richard, based in Pascagloua, Mississippi, which acted as the "[r]esponsible party" and insurance company under the "Workmen's Comp Only" section for Dunn's claim.

58 So. 3d at 1186. The court thus concluded that "Dr. Yager had 'systematic and continuous' contacts with Mississippi" to support the exercise of general personal jurisdiction. *Id.* (citations omitted).

By contrast, McBride lacked similar contacts with the State of Mississippi. In an uncontested affidavit, McBride says she has "never practiced medicine at a clinic or hospital in the State of Mississippi," has never "physically seen or treated a patient in the State of Mississippi," has not "come in to the [S]tate of Mississippi to manage a patient that was previously seen" by her, and has "not solicited any patients in Mississippi." McBride Aff. [76-2] ¶¶ 2, 4. McBride's affidavit shows that she had no purposeful contacts with the State of Mississippi, much less systematic and continuous ones. The Fraziers have not met their burden as to general jurisdiction.

2. Specific Jurisdiction

So the question turns to specific jurisdiction. "When a controversy is related to or arises out of a nonresident's contacts with the forum, the minimum-contacts inquiry focuses on the relationship among the defendant, the forum, and the litigation." *Stuart v. Spademan*, 772 F.2d 1185, 1190 (5th Cir. 1985). The Fifth Circuit articulated a three-step analysis for analyzing specific-jurisdiction issues in *Nuovo Pignone, SpA v. STORMAN ASIA M/V*:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

McBride does not directly contest the first step, but the Fraziers seem to address it when they say: "The physician-activities Dr. McBride participated in as outlined *supra* are sufficient to demonstrate that Dr. McBride has purposefully availed herself to the jurisdiction of Mississippi." Pls.' Mem. [86] at 4. The Fraziers offer no additional argument or authority on this point, but in the long-arm section of their brief, they contend that McBride: (1) is identified as the admitting physician to home health services in Mississippi; (2) prescribed J.L.F. to home health; (3) prescribed treatment for all home-health and IV therapy; (4) ordered, monitored, and evaluated all home-health and IV therapy; (5) accepted payment from a Mississippi insurance company for her professional services; and (6) supervised skilled services and treatment for home-health and IV therapy. Pls.' Mem. [86] at 2–3.

These alleged contacts are strikingly similar to those in *Sanders v. Buch*, where a doctor prescribed home healthcare, was listed as the attending physician, and provided orders and a plan

7

of care after the plaintiff returned to his home state. 938 F. Supp. 532, 534 (W.D. Ark. 1996). Despite these contacts, the court found that the doctor did not purposefully direct his activities to the forum state. *Id.* at 537–38. And as for the Fraziers' observation that McBride accepted payments from Mississippi, other courts have held that such transactions are not a sufficient basis for specific jurisdiction. *See, e.g.*, *Harlow v. Children's Hosp.*, 432 F.3d 50, 63−64 (1st Cir. 2005).

The courts that have addressed specific jurisdiction in the physician-patient context have applied a variety of jurisdictional rules to reach their results. Indeed, there is a large body of law on this point generally flowing from *Wright v. Yackley*, 459 F.2d 287, 288–89 (9th Cir. 1972) (finding no jurisdiction in Idaho over South Dakota doctor who treated his patient in South Dakota and merely phoned a prescription refill into Idaho). While McBride mentioned some of the cases in her rebuttal, neither party analyzed those holdings or examined the physician-specific rules that have developed. The Court is reluctant to do so *sua sponte*. Regardless, the Fraziers have not given the Court enough to conclude that they made a prima facie showing on this point.

But even assuming they had, McBride based her specific-jurisdiction argument on the second step of the test. *See* Def.'s Mem. [79] at 9. "Step two asks whether the cause of action arises out of or results from [the defendant's] forum-related contacts." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006) (internal quotation marks and citation omitted); *see also Rudzewicz*, 471 U.S. at 472. And that inquiry is claim specific. *Seiferth*, 472 F.3d at 274.

In *Seiferth*, the defendant designed a work platform that was attached to a helicopter. *Id.* at 270. The design work occurred in Florida, but the defendant later flew the helicopter to

8

Mississippi and inspected it. *Id.* After the platform failed, the injured plaintiff brought claims based on defective design and negligence. As to the design-defect claim, the Fifth Circuit found that personal jurisdiction did not exist:

> By transporting the helicopter and work platform to Mississippi and inspecting the platform there, Camus directed his activity toward the state and purposefully availed himself of its laws, which satisfies the first prong of the *Nuovo Pignone* analysis. The inquiry fails, however, at the second step, because the defective design claim does not arise out of or result from Camus's Mississippi contacts.

*Id.* at 275. On the other hand, personal jurisdiction did exist as to the negligence claims related to the in-state inspection. *Seiferth*, 472 F.3d at 276.

McBride makes the same argument here, but the Fraziers never address it, and it is not otherwise apparent that the Fraziers meet their burden at step two. Most of the alleged contacts relate to the discharge orders McBride signed before J.L.F. left Louisiana. And to the extent the Fraziers say McBride prescribed or supervised treatment in Mississippi, they have not explained how those activities are linked to the actual injuries and claims. They have not, for example, stated that the IV therapy McBride allegedly ordered, monitored, or supervised harmed J.L.F. *See id*. Because the Fraziers have not demonstrated that the claims arise out of or result from McBride's alleged forum-related contacts, they have failed to meet their burden of showing specific jurisdiction.[1]

---

[1] Assuming the Court had personal and subject-matter jurisdiction, the case would still be dismissed without prejudice as prematurely filed under Louisiana law. *See Huss v. Gayden*, 571 F.3d 442, 450 (5th Cir. 2009) (applying Mississippi choice-of-law rules to medical-malpractice claim of Mississippi resident against Tennessee doctor concerning treatment in Tennessee and concluding Tennessee law applied); *see also Flagg v. Stryker Corp.*, 819 F.3d 132, 137–38 (5th Cir. 2016) (explaining that, under Louisiana law, a medical-malpractice plaintiff may not bring her lawsuit until she has "present[ed her] claim to a medical review panel [and] 'the panel has rendered its expert opinion on the merits of the complaint'") (quoting *Delcambre v. Blood Sys., Inc.*, 893 So. 2d 23, 27 (La. 2005)) (emphasis omitted).

III. Conclusion

The Court has considered all arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendant Lori McBride's Motion to Dismiss for Lack of Jurisdiction [76] is granted; her Motion to Dismiss based on Choice of Law, Pre-Maturity of Suit under Louisiana Law, and *Forum Non Conveniens* [77] is considered moot; and the claims against her are dismissed without prejudice. The remaining parties are directed to contact Magistrate Judge Ball's chambers within 10 days of the entry of this Order to set the case for a case-management conference.

**SO ORDERED AND ADJUDGED** this the 2nd day of October, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE