UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MICHAEL FRAZIER AND JESSICA
FRAZIER, ON BEHALF OF THEIR
MINOR CHILD, J.L.F.                                                        PLAINTIFFS

V.                                                  CIVIL ACTION NO. 3:16-CV-976-DPJ-FKB

UNIVERSITY OF MISSISSIPPI
MEDICAL CENTER D/B/A BATSON
CHILDREN'S HOSPITAL, ET AL.                                        DEFENDANTS

ORDER

In this medical-negligence case, the defendants affiliated with Sta-Home Health and Hospice, Inc., seek dismissal of, or summary judgment on, the negligence per se claims asserted against them, as well as the claims against Sta-Home's officers and directors. Mot. [141]. For the reasons that follow, the motion is denied without prejudice as to the claims against the officers and directors; granted as to the negligence per se claims based on federal regulations; and granted in part as to the negligence per se claims based on state regulations.

I.     Facts and Procedural History

Plaintiff J.L.F., the minor daughter of Michael and Jessica Frazier, was a preterm infant born on April 17, 2004, with hydrocephalus (a buildup of excess cerebrospinal fluid in the brain). The Fraziers reside in Meridian, Mississippi.

J.L.F.'s relevant treatment history began in Mississippi on January 21, 2009, when she received a ventricular shunt implant to drain cerebrospinal fluid from her brain into her abdomen. Seven years later, she developed complications and was eventually transferred by ambulance to Children's Hospital in New Orleans, where pediatric neurosurgeon Dr. Lori McBride performed surgery to change the valve in her shunt.

According to the Amended Complaint, on March 8, 2016, discharge planners at Children's Hospital arranged for J.L.F.'s discharge to Sta-Home Health and Hospice, Inc. The contract for home-health services in Mississippi showed Dr. McBride, a Louisiana-licensed doctor, as the admitting physician.

J.L.F. continued to suffer various symptoms and was readmitted for several months of inpatient hospital care at Children's Hospital in New Orleans and a hospital in Jackson, Mississippi. She was ultimately "discharged home with permanent brain injuries requiring tube feedings and nursing care in the home 16 hours per day." Am. Compl. [9] ¶ 63.

The Fraziers filed this lawsuit on behalf of J.L.F. on December 21, 2016, asserting claims for medical malpractice against a slew of medical providers. Among the Defendants are Sta-Home Health and Hospice, Inc.; Sta-Home Health Agency of Carthage, Inc.; Sta-Home Health Agency of Carthage, LLC; Sta-Home nurses Candace Hoffer, RN, Katrina Trosper, RN, and Kasonya Boyd, RN; and Sta-Home corporate officers Vincent Caracci, Rhonda Hamilton, and Barry Davis (referred to collectively as the "Sta-Home Defendants").

Counts II through V of the Amended Complaint are aimed at the Sta-Home Defendants. Count II asserts a claim for "negligence *per se*[,] corporate negligence[,] and/or breach of contract" against the three Sta-Home entities "and their officers and directors in their respective individual and official capacities." *Id.* at 23 (capitalization altered). Count III alleges negligence and gross negligence on the part of the three Sta-Home entities. And Counts IV and V assert claims for negligence per se, negligence, and gross negligence against the three Sta-Home nurses—Hoffer, Trosper, and Boyd.

Through their motion [141], the Sta-Home Defendants seek dismissal of, or summary judgment on, claims premised on "alleged violations [of] federal and/or state regulations/law" as

2

well as the claims against Caracci, Hamilton, and Davis.[1]  Defs.' Mem. [142] at 8, 9.  The matters raised in the Sta-Home Defendants' motion have been fully briefed.

II.     Standards

The Sta-Home Defendants style their motion as one under either Rule 12(b)(6) or Rule 56.  But their motion comes roughly 10 months after they answered Plaintiffs' Amended Complaint, so any relief under Rule 12 would fall under Rule 12(c).  *See* Fed. R. Civ. P. 12(c) (providing for motion for judgment on the pleadings that may be filed "[a]fter the pleadings are closed—but early enough not to delay trial").  But in ruling on a motion under Rule 12(c), "the district court is confined to the pleadings and must accept all allegations contained therein as true."  *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001).  In this case, both sides submitted evidence on the Sta-Home Defendants' motion, which is styled alternatively as one for summary judgment.  And Plaintiffs did not object to treating the motion as a summary-judgment motion; instead, they submitted evidence they say supports their claims.  *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  The Sta-Home Defendants' motion is therefore properly considered under Rule 56.

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment,

---

[1] The first category of claims on which the Sta-Home Defendants seek dismissal or summary judgment, as described by them, would include the negligence per se claims asserted against the Sta-Home entities (Count II), as well as those asserted against the nurses (Count IV). While their Memorandum explicitly references only Count II, the Court construes the requested relief as seeking dismissal of or summary judgment on the negligence per se claims in both Counts II and IV.

3

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

III. Analysis

    A. Negligence Per Se Claims

"Mississippi recognizes the doctrine of negligence per se, which essentially provides that a breach of a statute or ordinance may render the offender liable in tort without proof of lack of due care." *Dallas v. Premier Vehicle Transp., Inc.*, No. 1:16-CV-358-LG-RHW, 2017 WL 3389793, at *2 (S.D. Miss. Aug. 7, 2017).

> [T]he negligence per se doctrine does not create a new cause of action. Rather, it is a form of ordinary negligence, that enables the courts to use a penal statute to define a reasonably prudent person's standard of care. . . .
>
> [. . . .]
>
> The effect of declaring conduct negligent per se is to render the conduct negligent as a matter of law. Thus, a person whose conduct is negligent per se cannot escape liability by attempting to prove that he or she acted reasonably under the circumstances. *However, a finding of negligence per se is not equivalent to a finding of liability per se. Plaintiffs in negligence per se cases must still establish causation in fact, legal cause, and damages.*

*Williams ex rel. Raymond v. Wal-Mart Stores East, L.P.*, 99 So. 3d 112, 116 (Miss. 2012) (quoting *Rains v. Bend of the River*, 124 S.W.3d 580, 589–90 (Tenn. App. 2003)) (emphasis in original). "Violation of a statute or ordinance constitutes negligence per se and will support a cause of action in tort where (1) the plaintiff is within the class protected by the statute, and (2) the harm sustained is the type sought to be prevented by the statute." *Dallas*, 2017 WL 3389793, at *2. Here, the Sta-Home Defendants say the Fraziers' negligence per se claims fail as a matter of law because the defendants violated no federal or state laws or regulations in their care for J.L.F.

1. Federal Regulations

Starting with federal law, the Amended Complaint states:

The Mississippi State Department of Health Rule Title 15 Part 16, Subpart 1 promulgates certain Rules for Minimum Standards of Care that must be met by all home health agencies. Defendants violated the following Rules:

a. Rule 46.3.4: The care team shall consist of the physician, agency staff, patient and/or family. [Mississippi Code Annotated section] 73-25-1 defines a physician as one with a duty to be licensed in the state of Mississippi. Additionally, [section] 73-25-33 defines the practice of medicine to mean, in pertinent part, to suggest, recommend, prescribe or direct for the use of any person, any drug, medicine, appliance or other agency . . . for the cure or relief of any disease or ailment. Furthermore, [section] 73-25-34 forbids the practice of medicine across state lines including treatment of a Mississippi resident by an out-of-state physician as a result of transmission of patient data by electronic means. Under the federal rules, a "physician" is interpreted in terms of collaboration,

5

> supervision and oversight requirements under Section 1861 (aa)(2)(B) and (aa)(3) of the Social Security Act. The federal regulation, 42 C.F.R. § 491.2, has interpreted the federal conditions of participation to mean a physician <u>licensed in the state where care is rendered to the patient</u>.

Am. Compl. [9] ¶ 79(a) (emphasis in original); *accord id.* ¶ 93(g); *see* 42 U.S.C. § 1395x (codifying section 1861 of the Social Security Act).

The implication is that the Sta-Home Defendants accepted a prescription for home-health services in Mississippi from Dr. McBride, who is not licensed to practice medicine in Mississippi, thereby violating federal law. But the sections of the United States Code and the Code of Federal Regulations ("C.F.R.") cited in the Amended Complaint do not mandate that a physician prescribing home-health services be licensed to practice medicine in the state in which the home-health services will be rendered. Instead, the cited sections provide definitions for Medicare laws and regulations relating to rural health clinics and Federally qualified health centers, neither of which are alleged to be at issue here. *See* 42 U.S.C. § 1395x(aa)(2)(B) (defining "rural health clinic" for purposes of Medicare as a facility that "has an arrangement . . . with one or more physicians . . . under which provision is made for the periodic review by such physicians of covered services furnished by physician assistants and nurse practitioners"); *id.* § 1395x(aa)(3) (defining "Federally qualified health center services" for purposes of Medicare as certain services "furnished to an individual as an outpatient of a Federally qualified health center"); 42 C.F.R. § 491.2 (defining terms under rural-health-clinic subpart of Medicare regulations).

In their response to the Sta-Home Defendants' motion, the Fraziers give lip service to the federal regulations they pleaded, electing instead to rely on 42 C.F.R. § 424.22. Under that section, home-health services will be reimbursed by Medicare only if a physician certifies a Plan

6

of Care ("POC").² The Fraziers say that Sta-Home violated the regulation because Dr. McBride did not sign the POC until two weeks after J.L.F. was discharged from home-health care. This, they say, breached the standard care that § 424.22 establishes.

To begin, the Fraziers neither asserted the certification argument in their Complaint nor moved to amend. There are two approaches for addressing a new claim raised in response to a dispositive motion—ignore the new theory or treat it as a motion to amend. *Compare Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."), *with Debowale v. US Inc.*, No. 95-20031, 1995 WL 450199, at *1 (5th Cir. July 3, 1995) (per curiam) ("The district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it."). The result here is the same either way because even assuming the Fraziers should be allowed to seek leave to amend, this part of their claim would be futile.

As the Sta-Home Defendants observe, the Fraziers neither allege nor attempt to establish that J.L.F. was a Medicare recipient, and a Client Coordination Note Report submitted by the Sta-Home Defendants shows the Primary Payor as "United Healthcare - MS"—a private health insurer. Client Coordination Note Report [147-3]. So the Fraziers have not shown that J.L.F. is "within the class" § 424.22 protects. *Dallas*, 2017 WL 3389793, at *2. Nor do they show how any harm they sustained "is the type sought to be prevented by the" regulation. *Id.*

---

² The section states: "Medicare Part A or Part B pays for home health services only if a physician certifies and recertifies the content specified in paragraphs (a)(1) and (b)(2) of this section, as appropriate." 42 C.F.R. § 424.22

In any event, the Fraziers have not established that Sta-Home violated § 424.22. That regulation provides that—for home-health services to be paid by Medicare—"certification of need for home health services must be obtained at the time the plan of care is established *or as soon thereafter as possible* and must be signed and dated by the physician who establishes the plan." 42 C.F.R. § 424.22(a)(2) (emphasis added). The Fraziers failed to address the "as soon thereafter" caveat to § 424.22(a)(2) and have not otherwise shown that the delay in this case violated that provision—assuming the regulation applies.

Aside from § 424.22, the Fraziers also craft a fairly elaborate argument that federal regulations incorporate state law, so if Sta-Home violated state law, it also violated federal regulations. According to them, Sta-Home did just that by accepting Dr. McBride's prescription for home-health services because she is not licensed in Mississippi. *See* Pls.' Resp. [146] at 6. To make their point, the Fraziers cite Mississippi Code sections 73-25-1; 73-25-33; and 73-25-34, which collectively regulate licensing requirements for those practicing medicine in Mississippi or engaging in telemedicine—the practice of medicine across state lines.

The argument is not persuasive because the federal regulations the Fraziers cite as incorporating state-licensing laws do not address Sta-Home's alleged conduct. For example, they cite 42 C.F.R. § 410.26, but that provision outlines the circumstances under which a physician can "bill the government for" certain services performed by non-doctors "at a doctor's rate." *United States v. Thomas*, No. 3:08-CR-170-DPJ-FKB, 2012 WL 3202954, at *2 (S.D. Miss. Aug. 3, 2012). Yet there is no indication Sta-Home attempted to bill Medicare for its services at Dr. McBride's physician rate. Section 410.26 is irrelevant. Likewise, the Fraziers have not explained how 42 C.F.R. § 491.2 (dealing with rural-health clinics) or the State

8

Operations Manual Appendix B-Guidance to Surveyors: Home Health Agencies §484.40 (addressing release of patient OASIS data) apply in this case.

In sum, the Fraziers have not at this point shown that Sta-Home violated the federal regulations they now rely upon or that such regulations create a valid negligence per se claim for Sta-Home's alleged conduct. Sta-Home's motion is therefore granted as to the federal regulations.[3]

    2.    State Regulations

Turning to the alleged state-law violations, the Fraziers cited a number of statutes and regulations in their Amended Complaint and then added a few more in their Response. They make three general arguments: (1) Dr. McBride violated state law by practicing medicine across state lines; (2) Sta-Home nurses violated state law by allowing Dr. McBride to prescribe home health; and (3) Kasonya Boyd, R.N., was improperly credentialed.

    a.    Dr. McBride's License

Starting with Dr. McBride, the Fraziers say she violated Mississippi Code sections 73-25-1; 73-25-33; and 73-25-34, which require physicians practicing in Mississippi to obtain licenses. According to the Fraziers, the Sta-Home Defendants were negligent per se because they accepted Dr. McBride's prescription for home-health services. They also cite Mississippi State Department of Health ("MSDH") Rule 46.3.41, which defines a physician as "an individual licensed by the proper authority in his state to practice medicine."

For these statutes and regulations to support a negligence per se theory, they must "define a reasonably prudent person's standard of care." *Williams ex rel. Raymond*, 99 So. 3d at 116.

---

[3] As discussed next, it also appears that the federal regulations addressing Dr. McBride's conduct would not set the standard of care for Sta-Home.

9

Yet the statutes and regulations the Fraziers cite address physician licensing rather than the standard of care for home-health services receiving prescriptions from out-of-state physicians.

A similar thing happened in *Moore v. Memorial Hospital of Gulfport*, where the plaintiffs attempted to avoid summary judgment by arguing that the defendants violated State Board of Pharmacy regulations. 825 So. 2d 658 (Miss. 2002). The Mississippi Supreme Court rejected the argument holding that the violations "may serve as evidence of negligence" but do not "create a separate cause of action" because "[t]he regulations do not establish a legal duty of care to be applied in a civil action." *Id.* at 665–66. The Mississippi Supreme Court revisited the issue in an analogous context in *Howard v. Howard*, 947 So. 2d 854 (Miss. 2006). There, the plaintiffs argued that the defendants violated the state's Minimum Standards regulating nursing-home licenses. *Id.* at 859. Again, the court rejected the argument holding that the Minimum Standards "serve as internal licensing regulations" and do not "establish a duty of care owed by nursing home administrators and licensees to nursing home patients." *Id.* at 860; *see also Hester v. Cain*, 950 So. 2d 231, 235–36 (Miss. Ct. App. 2007) (citing *Moore* and rejecting negligence per se claim based on alleged violation of nursing-home "statutes [and] regulations").

*Moore* does not mean that such regulations can never establish the standard of care; it held that the subject regulations did not. *See Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 407–08 (5th Cir. 2004) (citing *Hill v. Beverly Enters.-Miss., Inc.*, 305 F. Supp. 2d 644, 650–52 (S.D. Miss. 2003)). The same is true here. The physician-licensing statutes and regulations the Fraziers cite do not establish relevant standards of care for home-health services.[4]

---

[4] Regarding the physician-licensing statutes, it is worth noting the Mississippi Supreme Court's holding that "[n]egligence per se arises when a legislative body pronounces in a *penal* statute what the conduct of a reasonable person must be, whether or not the common law would require similar conduct." *Williams ex rel. Raymond*, 99 So. 3d at 116 (quoting *Rains*, 124 S.W.3d at 589–90) (emphasis added). So even if the cited statutes addressed the correct standard

10

b. Accepting Dr. McBride's Prescription

The Fraziers next say that Sta-Home violated Mississippi regulations by accepting the prescription. To support that theory, they cite the Nurse Practice Act, Rule 1.2(D), (J), and (U). Pls.' Mem. [146] at 11. And while the Fraziers did not reference those sections in the Amended Complaint, they did plead the theory itself and referenced the Nurse Practice Act. Am. Compl. [9] ¶ 93(a) ("Nursing staff violated the Nurse Practice Act by accepting an order from a person not licensed to practice in Mississippi."); *see Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014) ("Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief[]'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." (quoting Fed. R. Civ. P. 8(a)(2))). The theory is therefore before the Court.

The Nurse Practice Act the Fraziers cite is found in the section of the Mississippi Administrative Code governing the Mississippi Board of Nursing. The specific section the Fraziers cite defines "[u]nprofessional conduct" for nurses as including: "[p]racticing nursing beyond the authorized scope of the license or directing others to practice beyond their authorized scope;" "[p]ermitting, aiding or abetting an unlicensed person to perform activities requiring a license;" and "[p]racticing in an expanded role without certification by the board." Miss. Code R. § 30-18-2820:1.2(D), (J), (U).

The Fraziers say that, under section 73-25-34 of the Mississippi Code, Dr. McBride was prohibited from engaging in "telemedicine, or the practice of medicine across state lines," which she did when she prescribed home-health services in Mississippi. Miss. Code Ann. § 73-25-

---

of care, there would still be a question regarding negligence per se. This issue has not been explored with sufficient depth in the briefs to rely upon it at this point.

34(1). And they say that, by accepting the prescription from a physician not licensed in Mississippi, Sta-Home's nurses/agents "permit[ed], aid[ed,] or abett[ed] an unlicensed person to perform activities requiring a license." Miss. Code R. § 30-18-2820:1.2(J).

The Sta-Home Defendants ignored this issue in their Rebuttal, acknowledging neither section 73-25-34 nor the Nurse Practice Act the Fraziers raise. It is not the Court's duty to research issues for a party, especially when these issues re not straightforward. So before the Court could grant the Sta-Home Defendants' motion, they would need to address whether they violated the regulations by accepting a home-health prescription from Dr. McBride and, if so, whether the regulations set the standard of care for purposes of a negligence per se claim. This portion of the negligence per se claim will therefore proceed to discovery.[5]

### c. Nurse Boyd

The only other argument the Fraziers make in this portion of their response is that Defendant Boyd may not have been qualified to care for J.L.F. Pls.' Mem. [146] at 11–12. This argument appears to respond to the Sta-Home Defendants' contention that the Fraziers' claim based on Rule 46.23.1 of the home-health-agency regulations fails. Specifically, in the Amended Complaint, the Fraziers alleged that the Sta-Home Defendants breached the applicable regulatory standard of care by failing to "employ a full time qualified supervising nurse to advise the professional and patient care staff which shall be given authority to establish criteria for agency admission." Am. Compl. [9] ¶ 79(f). The cited regulation provides:

> Each Home Health Agency shall employ a qualified supervising nurse on a full-time basis. The supervising nurse shall be a registered nurse licensed to practice in Mississippi, who shall be readily available through the agency office to advise the professional and patient care staff. The supervising nurse shall be employed full-time in home health activities. . . . The supervising nurse shall:

---

[5] Like Section III(A)(2)(a), the parties have not provided sufficient analysis to know whether these rules are the type of regulations that can create negligence per se.

12

1. Direct, supervise and coordinate all skilled nursing services and other therapeutic services provided by the agency.

2. Be given the authority and responsibility to:

a. Develop and revise written patient care objectives[,] policies, and procedure manuals;

b. Assist in development of job description[s];

c. Assist in recruitment and selection of personnel;

d. Recommend to administrator number of levels of agency staff;

e. Plan and conduct orientation and continuing education for agency staff engaged in patient care;

f. Evaluate agency staff performance;

g. Assist in planning and budgeting for provision of services; [and]

h. Assist in establishing agency criteria for admission and discharge of patients.

Miss. Code R. § 15-16-1:46.23.1.

The Fraziers themselves acknowledge that Boyd is a registered nurse. *See* Defs.' Mem. [142] at 5 (citing Am. Compl. [9] ¶ 19). They say, however, that Boyd's status as a registered nurse alone does not render her qualified because "numerous oversight and credentialing requirements, as well as statutorily imposed duties of the agency to assure that the quality of work performed by all [nurses] was adequate," must also be considered. Pls.' Mem. [146] at 11–12. But they fail to explain what exactly Sta-Home violated, offering only this conclusory argument. The Fraziers have not established a basis for negligence per se regarding Boyd.

In sum, the Court finds that the state-law negligence per se claims should survive summary judgment as to the claim that Sta-Home's agents allowed Dr. McBride to violate Mississippi Code sections 73-25-1; 73-25-33; and 73-25-34, thereby violating the Nurse Practice

Act. The Sta-Home Defendants' Motion for Summary Judgment is otherwise granted as to the state-law negligence per se claims.[6]

   B.   Claims Against Corporate Officers

The Sta-Home Defendants also seek summary judgment on the claims against Caracci, Hamilton, and Davis—Sta-Home's corporate officers. In addition to the negligence per se claim, the Fraziers allege claims for corporate negligence and/or breach of contract against the Sta-Home officers. *See* Am. Compl. [9] at 74. The Sta-Home Defendants argue that "Mississippi law does not recognize personal liability or a private cause of action against a corporation's officers and directors except in very limited circumstances, which are not met here." Defs.' Mem. [142] at 6; *see Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993) ("Mississippi follows the general rule that individual liability of corporate officers or directors may not be predicated merely on their connection to the corporation but must have as their foundation individual wrongdoing."). And they contend that the Fraziers have not demonstrated that the requirements for piercing the corporate veil have been met.

In response, the Fraziers point to a regulation that requires a home-health agency to "have an organized governing body . . . which is legally responsible for the conduct of the agency." Miss. Code R. § 15-16-1:46.21.1. That governing body must "adopt agency policies, including [policies concerning] admission, discharge, and care of patients." *Id.* § 15-16-1:46.21.2. The Fraziers intimate that Caracci, Hamilton, and Davis are part of Sta-Home's governing body and are therefore "legally responsible" for Sta-Home's conduct.

---

[6] This ruling does not address whether the state statutes and regulations are relevant as proof of negligence.

The Sta-Home Defendants did not respond to this argument in rebuttal, leaving the Court without legal analysis rebutting the Fraziers' position. And because other portions of this case are moving forward, the Court will carry this issue through discovery. *See Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (holding that "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The motion is denied without prejudice as to the claims against Defendants Caracci, Hamilton, and Davis.

IV. Conclusion

The Court has considered the parties' arguments. Those not specifically addressed would not have changed the outcome. For the foregoing reasons, Defendants' Motion to Dismiss or for Summary Judgment [141] is denied as to state-law negligence per se claims addressed in Section III(A)(2)(b) of this Order and the claims against Vincent Caracci, Rhonda Hamilton, and Barry Davis. The motion is otherwise granted.

**SO ORDERED AND ADJUDGED** this the 24th day of October, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE